

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

2020 FEB 21  PM 12: 00

DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3: 17-CR-414-N |
| KAMYAR JAHANRAKHSHAN (1)<br>ALSO KNOWN AS ANDREW RAKHSHAN | |

## FACTUAL RESUME

In support of Kamyar Jahanrakhshan, aka Andrew Rakhshan's plea of guilty to the

offense in Count Two of the Superseding Indictment, Jahanrakhshan, the defendant,

Franklyn Mickelsen, the defendant's attorney, and the United States of America (the

government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Two of the Superseding Indictment,

charging a violation of 18 U.S.C. § 371, that is, Conspiracy to commit Computer Fraud in

violation of 18 U.S.C. § 1030(a)(5)(A), the government must prove each of the following

elements beyond a reasonable doubt:[1]

| First: | That the defendant and at least one other person made an agreement to commit the offense of computer fraud, as charged in the Indictment; |
|---|---|
| Second: | That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and |

---

[1] Fifth Circuit Pattern Jury Instruction, 2019 Edition, 2.15A.

Third:           That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

The elements of Computer Fraud, a violation of 18 U.S.C. § 1030(a)(5)(A), are as follows:[2]

First:           The defendant knowingly caused the transmission of a program, information, code, or command; and

Second:          By doing so, the defendant intentionally caused damage to a protected computer without authorization.

Finally, 18 U.S.C. § 1030(c)(4)(A)(i)(I) and (B) provides that the government must prove that the offense caused (or in the case of an attempted offense, would, if completed, have caused) a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

## STIPULATED FACTS

1.      Kamyar Jahanrakhshan, aka Andrew Rakhshan admits and agrees that starting in or about December 2014, and continuing through in or about August 2015, in the Dallas Division of the Northern District of Texas and elsewhere, defendant Kamyar Jahanrakhshan, also known as Kamyar Jahan Rakhshan, Andy or Andrew Rakhshan, Andy or Andrew Kamyar (or Kamiar or Kamier) Rakhshan, knowingly and intentionally agreed and conspired with other individuals known and unknown to the Grand Jury, to

_____

[2] Adapted from Fed. Crim. Jury Instr. 7th Cir. 1030(a)(5)(A) (2019 ed.).

**Factual Resume—Page 2**

knowingly cause the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization to a protected computer, and by said transmission cause a loss aggregating at least $ 5,000 or more during a one-year period, in violation of 18 U.S.C. § 1030(a)(5)(A) (18 U.S.C. §1030(c)(4)(A)(i)(I) and (B).

All in violation of 18 U.S.C. § 371.

2.      The defendant targeted a legal aggregation site that posted public information regarding or related to his prior criminal activity.  He initially contacted this site and requested that the site remove a legal opinion pertaining to this prior criminal activity.

3.      When the targeted site refused to remove the public information, the defendant offered a bribe to encourage compliance.

4.      When the targeted sites rejected the bribe, the defendant threatened to launch a distributed denial of service (DDoS) attacks on the site, until they complied.

5.      The defendant researched and sought out individuals or entities to assist him launch the DDoS attacks, such as stresser or booter services like ItsFluffy and VMDeploy (Ragebooter).  The services essentially allowed the defendant to transmit a program, information, code, or command, which in combination with the amplification services offered by his coconspirators, would overwhelm the targeted site or its surrounding infrastructure with a flood of Internet traffic, and cause a disruption of services or a site failure.

6.      Between January 20, 2015, and January 26, 2015, the defendant with the agreement and assistance of his coconspirators, launched a successful DDoS attacks of the Leagle.com site hosted at Softlayer Technologies Inc., taking down the site until Leagle.com finally complied and removed the opinion.

7.      The defendant agrees that the launching of the DDoS attacks caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

8.      The defendant agrees that the defendant committed all the essential elements of the offense(s).  This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case.  The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the Superseding Indictment.

AGREED TO AND STIPULATED on this ___ day of February 2020.


KAMYAR JAHANRAKHSHAN
aka Andrew Rakhshan
Defendant



FRANKLYN MICKELSEN
Attorney for Defendant

Factual Resume—Page 4



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

KAMYAR JAHANRAKHSHAN (1)
ALSO KNOWN AS ANDREW RAKHSHAN

NO. 3:__ CR-414-N

**AMENDED PLEA AGREEMENT**

Kamyar Jahanrakhshan, aka Andrew Rakhshan, the defendant, Franklyn

Mickelsen, the defendant's attorney, and the United States of America (the government)

agree as follows:

    1.    **Rights of the defendant**: The defendant understands that the defendant

has the rights:

        a.    to plead not guilty;

        b.    to have a trial by jury;

        c.    to have the defendant's guilt proven beyond a reasonable doubt;

        d.    to confront and cross-examine witnesses and to call witnesses in the defendant's defense; and

        e.    against compelled self-incrimination.

    2.    **Waiver of rights and plea of guilty**: The defendant waives these rights

and pleads guilty to the offense alleged in Count Two of the Superseding Indictment,

charging a violation of 18 U.S.C. § 371, that is, Conspiracy to commit Computer Fraud in

violation of 18 U.S.C. § 1030(a)(5)(A). The defendant understands the nature and

elements of the crime to which he is pleading guilty, and agrees that the factual resume

he has signed is true and will be submitted as evidence.

3.      **Sentence**:  The maximum penalties the Court can impose include:

a.      imprisonment for a period not to exceed 5 years;

A̸R̸   250,000   *RM csh*

b.      a fine not to exceed $~~100,000~~, or twice any pecuniary gain to the defendant or loss to the victim(s);

c.      a term of supervised release of not more than 3 years, which may be mandatory under the law and will follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d.      a mandatory special assessment of $ 100;

e.      restitution to victims or to the community, which may be mandatory under the law, and which the defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone;

f.      costs of incarceration and supervision; and

g.      forfeiture of property.

4.      **Immigration consequences**:  The defendant recognizes that pleading

guilty may have consequences with respect to his immigration status if he is not a citizen

of the United States.  Under federal law, a broad range of crimes are removable offenses.

The defendant understands this may include the offense to which he is pleading guilty,

and for purposes of this plea agreement, the defendant assumes the offense is a

removable offense.  Removal and other immigration consequences are the subject of a

separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of the defendant's conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea of guilty may entail, even if the consequence is his automatic removal from the United States.

5.      **Court's sentencing discretion and role of the Guidelines**: The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with his attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw his plea if his sentence is higher than expected. The defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.

6.      **Mandatory special assessment**: The defendant agrees to pay to the U.S. District Clerk the amount of $100 in satisfaction of the mandatory special assessment in this case.

7.      **Defendant's agreement**: The defendant shall give complete and truthful information and/or testimony concerning his participation in the offense of conviction. Upon demand, the defendant shall submit a personal financial statement under oath and submit to interviews by the government and the U.S. Probation Office regarding his capacity to satisfy any fines or restitution. The defendant expressly authorizes the United

Plea Agreement—Page 3

States Attorney's Office to immediately obtain a credit report on him in order to evaluate his ability to satisfy any financial obligation imposed by the Court. The defendant fully understands that any financial obligation imposed by the Court, including a restitution order and/or the implementation of a fine, is due and payable immediately. In the event the Court imposes a schedule for payment of restitution, the defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy his full and immediately enforceable financial obligation. The defendant understands that he has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.

8.     The defendant further agrees to relinquish all interest in the property identified in Attachment A, and agrees to waive all his legal right, title, and ownership interest in the property. The defendant agrees not to assert any ownership, proprietary, or possessory interest in the property identified in Attachment A at any time in the future. The defendant agrees to take all steps, as requested, to pass clear title to this property to the Federal Bureau of Investigation, including executing any and all documents necessary to transfer all interest he has or holds in this property.

9.     **Government's agreement**: The government will not bring any additional charges against the defendant based upon the conduct underlying and related to his plea of guilty. The government will file a Supplemental Plea Agreement in this case, as is routinely done in every case, even though there may or may not be any additional terms. The government will dismiss, after sentencing, the original Indictment and any remaining

Plea Agreement—Page 4

charges in the pending Superseding Indictment. This agreement is limited to the United

States Attorney's Office for the Northern District of Texas and does not bind any other

federal, state, or local prosecuting authorities, nor does it prohibit any civil or

administrative proceeding against the defendant or any property.

10.    **Violation of agreement**: The defendant understands that if he violates any

provision of this agreement, or if his guilty plea is vacated or withdrawn, the government

will be free from any obligations of the agreement and free to prosecute him for all

offenses of which it has knowledge. In such event, the defendant waives any objections

based upon delay in prosecution. If the plea is vacated or withdrawn for any reason other

than a finding that it was involuntary, the defendant also waives objection to the use

against him of any information or statements he has provided to the government, and any

resulting leads.

11.    **Voluntary plea**: This plea of guilty is freely and voluntarily made and is

not the result of force or threats, or of promises apart from those set forth in this plea

agreement. There have been no guarantees or promises from anyone as to what sentence

the Court will impose.

12.     **Waiver of right to appeal or otherwise challenge sentence**: The

defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an

amount to be determined by the district court.  The defendant further waives his right to

contest the conviction, sentence, fine and order of restitution or forfeiture in any

collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. §

2255.  The defendant, however, reserves the rights (a) to bring a direct appeal of

(i) a sentence exceeding the statutory maximum punishment or (ii) an arithmetic error at

sentencing; (b) to challenge the voluntariness of his plea of guilty or this waiver; and

(c) to bring a claim of ineffective assistance of counsel.

13.     **Representation of counsel**: The defendant has thoroughly reviewed all

legal and factual aspects of this case with his attorney and is fully satisfied with that

attorney's legal representation.  The defendant has received from his attorney

explanations satisfactory to him concerning each paragraph of this plea agreement, each

of his rights affected by this agreement, and the alternatives available to him other than

entering into this agreement.  Because the defendant concedes that he is guilty, and after

conferring with his attorney, the defendant has concluded that it is in his best interest to

enter into this plea agreement and all its terms, rather than to proceed to trial in this case.

14.     **Entirety of agreement**: This document is a complete statement of the

parties' agreement and may not be modified unless the modification is in writing and

signed by all parties.  This agreement supersedes any and all other promises,

representations, understandings, and agreements that are or were made between the

Plea Agreement—Page 6

parties at any time before the guilty plea is entered in court.  No promises or

representations have been made by the United States except as set forth in writing in this

plea agreement.

AGREED TO AND SIGNED this 21 day of February 2020.

ERIN NEALY COX
UNITED STATES ATTORNEY

CANDINA S. HEATH
Assistant United States Attorney
candina.heath@usdoj.gov
Texas State Bar. No. 09347450
1100 Commerce Street, Third Floor
Dallas, Texas  75242
Telephone: 214-659-8600 Fax: 214-659-8805

ERRIN MARTIN
Deputy Criminal Chief

I have read or had read to me this plea agreement and have carefully reviewed
every part of it with my attorney.  I fully understand it and voluntarily agree to it.

KAMYAR JAHANRAKHSHAN                    Date 2-21-20
aka Andrew Rakhshan
Defendant

I am the defendant's attorney.  I have carefully reviewed every part of this plea
agreement with the defendant.  To my knowledge and belief, my client's decision to enter
into this plea agreement is an informed and voluntary one.

FRANKLYN MICKELSEN                    Date 2-21-20
Attorney for Defendant

Plea Agreement—Page 7

# EVIDENCE RECOVERY LOG
### PRINT LEGIBLY

PAGE 1 OF 2

## GENERAL INFORMATION

DATE 7/26/17

CASE ID 289A-DL-6188255

LOCATION 989 112th Ave NE #705 Bellevue, WA

PREPARER/ASSISTANTS SA Joel Martini

**PERSONNEL** (Include Initials)
- SA Nate Lau
- SA Joel Martini
- TFO Derek Hill
- SA Laurie Diver
- ITS-FE John Powers
- LA Reggie Chapman
- SA Matthew Dosher

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY / OBSERVED BY (Last name) | PACKAGING METHOD | COMMENTS (if needed) |
|---|---|---|---|---|---|
| 1 | 4 IDE Hard Drives | Room C, beside bed | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 2 | Apple iPhone | Room C, beside bed | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 3 | Fox rental car reservation | Room E, bottom drawer | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 4 | 2 USB flash drives | Room E, bottom drawer | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 5 | HP Envy laptop (serial #5CD5202893) | Room D, on floor | LA Reggie Chapman / ITS-FE John Powers | paper | |
| 6 | 4 SD cards | Room D, on floor | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 7 | 6 CDs | Room D, on floor | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 8 | Dell Latitude E5440 laptop (serial #7J5X0HF2) | Room D, on floor | LA Reggie Chapman / ITS-FE John Powers | paper | |
| 9 | Motorola V300 cell phone | Room D, behind chair in bag | LA Reggie Chapman / ITS-FE John Powers | plastic | |
| 10 | Nokia blue cell phone | Room D, behind chair in bag | LA Reggie Chapman | plastic | |
| 11 | Apple iPhone (model: A1387) | Room D, in plastic on bed | TFO Derek Hill | plastic | |
| 12 | 4 CDs | Room D, in hallway | TFO Derek Hill | plastic | |
| 13 | Voice recorder with tape | Room D, in hallway | SA Laurie Diver | plastic | |
| 14 | 4 voice recorder tapes | Room D, in hall | TFO Derek Hill / SA Laurie Diver | plastic | |

Attachment A

# EVIDENCE RECOVERY LOG
PRINT LEGIBLY

PAGE __2__ OF __2__

## GENERAL INFORMATION

DATE _____

CASE ID _____

LOCATION _____

PREPARER/ASSISTANTS _____

PERSONNEL  (include Initials)

_____

_____

_____

_____

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY / OBSERVED BY (Last name) | PACKAGING METHOD | COMMENTS (if needed) |
|---|---|---|---|---|---|
| 15 | Tata Consulting USB flash drive | Room D, in laptop backpad | Rogsie Olson Chapman Thomas | plastic | |
| 16 | Misc. Bank Statements | Room D, in hallway | Tio Deck Hill | plastic | |
| 17 | 2014 Audi BDX7229 Registration Stall 318, Glove Compartment | | Laue Deker Matthew Dakes Rogsie Chapman | paper plastic | |

David Bukoski Interview 11/29/18

Partial Interview Transcription Beginning 17:20

SA Peterson: So who do you use for servers?

Bukoski: There is some person in Romania. But I buy from, I'm pretty sure, American, Ampnode.

SA Peterson: You buy from Ampnode?

Bukoski: Yes, I just did it originally to find out where he hosted because he was just a reseller, he doesn't actually own it. Then I kept it.

SA Peterson: What do you know about Ampnode?

Bukoski: Apparently his names Mike Andrews, that's on his email but I'm going to go off that. He's definitely was from HackForums at one point.

Agent Rudd: You talked to him before?

Bukoski: Yeah, but just on email.

SA Peterson: Do you know what his Hackforums nickname is?

Bukoski: I couldn't tell you.

SA Rudd: How do you know he is American?

Bukoski: He definitely seems American. So, and it's gmail, so if you guys want you can write up one of your Subpoenas I know you can do. I know the FBI is the FBI.

SA Peterson: How many servers do you normally get from Ampnode?

Bukoski: One.

SA Peterson: And how much throughput do you think you get get from one server?

Bukoski: Says one gigabit but it is a couple hundred Megabits.

SA Peterson: And that's enough for your customers?

Bukoski: I mean, nowadays I don't care to provide them anymore, so they're having to deal with it usually.

SA Peterson: How much does Ampnode charge for a server?

Bukoski: $155 minimum, and it goes up to like $400.

SA Peterson: Per month?

Bukoski: Yeah, for their servers.

SA Peterson: What kind of payment does he accept?

Paypal and Bitcoin. His Paypals are kind of throw-aways, if you know what that means.

SA Peterson: Yeah.

Bukoski: Not real.